United States District Court
Southern District of Texas
**ENTERED**
March 26, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Gregory D. B., § § § | |
| *Plaintiff,* § § | Civil Action No. 4:23-cv-04188 |
| v. § § | |
| Martin O'Malley,[1] § Commissioner of Social Security, § § | |
| *Defendant.* § § | |

# MEMORANDUM AND ORDER

This appeal from an administrative ruling denying social security benefits was transferred to the undersigned judge upon the parties' consent. Dkt. 12. After carefully considering the parties' briefs, Dkt. 6, 13, 14, the record, Dkt. 5, and the applicable law, the Court grants Plaintiff Gregory D. B.'s request to reverse the Commissioner's decision (Dkt. 6) and denies the Commissioner of Social Security's motion for summary judgment (Dkt. 13).

---

[1] The Acting Commissioner of Social Security is Leland Dudek, but no motion to substitute him as Defendant has been filed.

## Background

Plaintiff was born in 1962, has a high school education, and has past relevant work experience as an electrician, a control-panel assembler, and an electrical assembler. R.230, 208, 1419. He protectively applied for disability benefits on February 24, 2016, because of musculoskeletal impairments, alleging a disability onset date of January 21, 2016. R.99, 185-86.

The Commissioner denied Plaintiff's application and Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). R.122-25, 126. Plaintiff, her attorney, and a vocational expert ("VE") participated in a hearing before an ALJ in January 2019. R.43-80. The ALJ denied Plaintiff's appeal in April 2019. R.7-21. Plaintiff requested review from the Appeals Council, which denied review in January 2020. R.1-6.

In March 2020, Plaintiff filed a complaint in the United States District Court of Colorado. R.1436-39. Defendant filed an unopposed motion to remand the case, which the District Court granted in October 2020. R.1442-43. In January 2021, the Appeals Council issued an order remanding the case to an ALJ for further proceedings. R.1427-33.

A different ALJ held a hearing in October 2022. R.1395-1426. The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016, and had not engaged in substantial gainful activity since January 21, 2016, the disability onset date. R.1369. Through

2

the date last insured, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion ("ACDF") at C5-C7 in July of 2016; degenerative disc disease of the lumbar spine with soft tissue lesion at L2-3; diabetes mellitus with neuropathy; and chronic obstructive pulmonary disease ("COPD"). *Id.* The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. R.1371. This finding was based on the ALJ's analysis of Plaintiff's physical and mental impairments. R.1369-73.

Given his limitations, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), finding that through the date last insured, he can perform light work with certain limitations:

> [Plaintiff] could stand and/or walk about six hours in an eight-hour workday, sit at least six hours in an eight-hour workday and lift and/or carry 10 pounds frequently and 20 pounds occasionally. However, he could not be required to crawl or climb ropes, ladders or scaffolds. The claimant could only occasionally stoop, crouch, kneel, balance and negotiate stairs and ramps. He could never be required to work in proximity to hazards. Standing and/or walking is limited to 90 minutes at a time, and then he would have needed to be allowed to sit at the workstation for 10 minutes while continuing to work. He could not have been required to work in extreme temperatures or in environments with concentrated exposure to pulmonary irritants or in environments with heavy industrial vibrations.

R.1373. The ALJ created the RFC after evaluating Plaintiff's asserted symptoms in light of the objective medical evidence and other evidence, including opinions from three treating physicians, a nurse practitioner, and two state agency medical consultants. R.1373-78. The ALJ determined that, with this RFC, Plaintiff could not perform his past relevant work as an electrician, electrical assembler, or control panel assembler. R.1378-79. But the ALJ found other jobs existing in significant numbers in the national economy that Plaintiff can perform, namely as an information clerk, general office clerk, cashier, and office helper. R.1379-80.

Plaintiff appealed the determination to the Social Security Appeals Council, which denied review. *See* R.1353-59. This appeal followed. Dkt. 1; 42 U.S.C. § 405(g).

## **Legal standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not

be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote

5

omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *See id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. The ALJ did not properly evaluate key medical opinions when formulating the RFC.

Plaintiff challenges the ALJ's evaluation of certain medical opinions.[2] *See* Dkt. 6 at 17-24; Dkt. 14 at 2-5. Specifically, Plaintiff argues that the ALJ gave "little weight" to the opinions from his treating physician, Dr. Seth Gursky, and his treating Nurse Practitioner, Nicole Schraeder, while giving "great weight" to the opinion of a non-examining state agency medical consultant. *See* Dkt. 6 at 18-19. Plaintiff maintains that, pursuant to the applicable version of 20 C.F.R. § 404.1527(c)(2), Dr. Gurksy's opinion should

---

[2] Plaintiff also challenges the ALJ's evaluation of Plaintiff's subjective statements in determining the RFC. *See* Dkt. 6 at 24-26. Given the disposition of this case, the Court need not address Plaintiff's additional contention.

6

have been granted controlling weight. *See id.* at 22. And even if the ALJ was justified in not assigning controlling weight to Dr. Gursky's opinion, Plaintiff asserts that the ALJ failed to apply the required factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6) and § 416.927(c)(2)-(6) before making this determination. *See id.* at 23. As a further point, Plaintiff argues that N.P. Schraeder's opinion is also entitled to deference under the applicable regulations. *See id.* Plaintiff also disputes the ALJ's conclusion that both medical opinions: (1) are unsupported by Plaintiff's physical examinations, (2) are inconsistent with evidence of Plaintiff's improvement following surgery, and (3) contradict Plaintiff's own statements regarding daily activities. *See id.* at 18-19.

The Commissioner concedes that the ALJ was required to weigh the opinions from Dr. Gursky and N.P. Schraeder under the factors in 20 C.F.R. § 404.1527. *See* Dkt. 13 at 10-11; Dkt. 14 at 5. Nonetheless, the Commissioner responds that the ALJ properly considered Dr. Gursky and N.P. Schraeder's medical opinions, substantiated good cause for assigning the opinions little weight, and formulated an RFC that substantial evidence supports. *See* Dkt. 13 at 12, 10.

As reflected below, Plaintiff is correct that the ALJ's decision did not apply the proper framework when analyzing Dr. Gursky's medical opinion. For this reason alone, reversal is warranted.

7

### A. Framework for evaluating medical opinions for claims filed on or before March 27, 2017

As the Commissioner acknowledges, because Plaintiff protectively filed for benefits in 2016, the framework in 20 C.F.R. § 404.1527 governs the evaluation of medical opinions. *See* Dkt. 13 at 16-17 (citing 20 C.F.R. § 404.1527 when discussing the ALJ's analysis of Dr. Gursky and N.P. Schraeder's opinions); 20 C.F.R. § 404.1527 (applies to claims filed on or before March 27, 2017). Under that regulation, ALJs must give "controlling weight" to a treating source's medical opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with … other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quotation omitted).

Contrariwise, a treating source's opinion may be assigned little to no weight if the ALJ finds good cause. *Id.* at 455-56; *Littleton v. Comm'r of Soc. Sec.*, 2017 WL 1397128, at *6 (S.D. Tex. Feb. 22, 2017). Good cause exists when the "treating physician's evidence is conclusory, is unsupported by medically accepted clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 556 (citing *Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237).

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject

the opinion of the treating physician *only if* the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453. Those criteria are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c); *Newton*, 209 F.3d at 456.

An ALJ must analyze all—not just some—of the factors "before declining to give any weight to the opinions of the claimant's treating specialist." *Patino v. Colvin*, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (quoting *Newton*, 209 F.3d at 456). These requirements apply whenever the ALJ rejects the sole relevant treating or examining medical opinions. *See Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *accord Kneeland,* 850 F.3d at 760.

### B. The ALJ did not apply the appropriate framework when evaluating Dr. Gursky's opinion.

Here, the ALJ's decision applied the wrong framework when analyzing Dr. Gursky's opinion, which is not controverted by any other treating or examining source. *See Newton*, 209 F.3d at 453. The decision declares that the ALJ analyzed the medical opinions "in accordance with the requirements of 20 CFR 404.1520c"—which governs claims filed *on or after* March 27, 2017.

9

*See* R.1373. The ALJ's opinion never cited the applicable regulation, 20 C.F.R. § 404.1527, which applies to claims filed before that date. *See* R.1366-81. Moreover, the ALJ explained that he did "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from the claimant's medical sources." R.1376 (reciting the language of 20 C.F.R. § 404.1520c(a)). That is diametrically opposed to Section 404.1527, which presumes that opinions of treating physicians, like Dr. Gursky's, would receive controlling weight. *See Newton*, 209 F.3d at 455.

Although the ALJ's opinion mentions assigning "weight" to the medical opinions, *see* R.1376-78—a term utilized in 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions.")—the analysis does not follow through by addressing the "treating physician rule" or the factors that must be considered before discounting Dr. Gursky's opinion. *See Newton*, 209 F.3d at 453, 456. Instead, the ALJ's opinion only addressed the supportability and consistency of Dr. Gursky's opinion. For instance, the ALJ noted that Dr. Gursky's opinion concerning Plaintiff's limited range of motion lacked support from relatively benign physical examinations. R.1378; *see* Dkt. 13 at 16 (Commissioner citing supportability under 20 C.F.R. § 404.1527(c)(3)). The ALJ also found the opinion inconsistent with Plaintiff's statements indicating improvement after surgery and with the state agency medical consultant's opinion, which was

10

afforded greater weight. R.1378. That analysis tracks the new regulation, 20 C.F.R. § 404.1520c, and not the regulation that applies to Plaintiff's claim. And despite the Commissioner's assertion that the ALJ supplied good cause for rejecting Dr. Gursky's opinion, *see* Dkt. 13 at 12, nowhere does the ALJ's decision reference the good cause standard or the mandatory factors.

The fairest reading of the opinion indicates that the ALJ mistakenly applied the new regulation, when the prior version controls. At best, however, the ALJ's decision is ambiguous as to whether it applied the proper regulation when evaluating Dr. Gursky's opinion. Courts have concluded that comparable ambiguity constitutes reversible error. *See e.g.*, *Dotson v. Kijakazi*, 2022 WL 180654, at *2 (N.D. Miss. Jan. 19, 2022) (reversing when the ALJ's decision assigned "weight" instead of "persuasiveness," addressed "only the factors set out under the new regulations, [and] not the detailed analysis required by *Newton*," and failed to reflect "the presumption that [the treating physicians'] opinions were entitled to controlling or great weight"); *Jones v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3509035, *9 (W.D. La. July 27, 2022) (noting it was not "clear which regulations the ALJ applied in evaluating the medical opinions she considered"; reversing and remanding because the ALJ did not apply the correct regulations), *adopted by* 2022 WL 3448676 (W.D. La. Aug. 17, 2022).

The Commissioner invites this Court to shoehorn the ALJ's findings into the applicable framework that the ALJ did not apply. But the ALJ's opinion

11

conspicuously omits any mention of or any findings on multiple factors required to properly discount a treating physician's opinion, such as the length of the treatment relationship, the frequency of examinations, and the nature and extent of the treating relationship. *See* 20 C.F.R. § 1527(c)(2)(i)-(ii). These factors are important here because Dr. Gursky treated Plaintiff for an entire year, seeing him on a monthly basis starting in March 2016. *See* R.357-62, 351-56, 346-50, 340-45, 334-39, 328-33, 322-27, 320-21, 314-19, 267-69; R.37 (March 2017 Disability Impairment Questionnaire, noting monthly visits).

The failure to consider Dr. Gursky's longstanding treatment is significant, particularly in light of the ALJ's reasoning. When rejecting Dr. Gursky's opinion, the ALJ emphasized that the opinion was issued on March 22, 2017, R.41, after Plaintiff's last-insured date of December 31, 2016. *See* R.1378. That alone is not a cognizable basis for rejecting a treating source's opinion. *See Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates."); *see also, e.g.*, *Hutchins v. Colvin*, 2015 WL 4660976, at *5 (N.D. Tex. Aug. 6, 2015) (treating physician's opinion was "not facially invalid simply because it is retrospective"); *see also Murphy v. Berryhill*, 2018 WL 4568808, at *17 n.20 (N.D. Tex. Sept. 24, 2018). Indeed, as Plaintiff observes, the ALJ chose to

credit opinions of *non*-treating physicians that likewise were issued after Plaintiff's last insured date. *See* Dkt. 6 at 19; R.1377 (assigning "great weight" to a state agency consultant's October 2017 opinion).

More fundamentally, the ALJ's rationale is flawed because Dr. Gursky based his retrospective opinion on his observations during examinations and treatments *before* December 31, 2016. *See* R.357-62, 351-56, 346-50, 340-45, 334-39, 328-33, 322-27, 320-21, 314-19, 267-69; R.37-41. This fact underscores the importance of the corresponding factors under 20 C.F.R. § 404.1527(c)(2)(i) and (ii). It also shows why the lack of a detailed analysis is problematic. *See, e.g.*, *Dotson*, 2022 WL 180654, at *2 (reversing where the required analysis "simply was not done, and the decision offers little to no assurance that the applicable law was in fact applied"); *Patino*, 2016 WL 1664912, at *7 (reversing when the ALJ's opinion "fail[ed] to show that he conducted a detailed analysis of [a treating physician's] opinion in accordance with Section 404.1527(c)").

The ALJ's failure to apply the controlling legal standard means that the decision is not supported by substantial evidence. *See Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) (refusing to presume "that the ALJ would have reached the same conclusion had he applied the proper legal standards"). And the record reinforces that the error was prejudicial.

Dr. Gursky opined that during an eight-hour workday, Plaintiff's impairments and treatment would necessitate unscheduled 10- to 20-minute

13

breaks every 1-2 hours and two or three absences every month. R.40-41. The VE testified that a person with Plaintiff's RFC, combined with either of the limitations supported by Dr. Gursky, could not perform any jobs. *See* R.1424. Acceptance of Dr. Gursky's opinion, which is supported by strong presumptions, would lead to the conclusion that Plaintiff is disabled. *See Dotson*, 2022 WL 180654, at *2. Reversal and remand are required.

## Conclusion

For the foregoing reasons, it is **ORDERED** that the Commissioner of Social Security's motion for summary judgment (Dkt. 13) be **DENIED**.

It is further **ORDERED** that the Commissioner's decision be **REVERSED**, and that this matter be **REMANDED** for further administrative proceedings.

Signed on March 26, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge